UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JONATHAN SUMMERS,

               Plaintiff,                   Case No. 1:10-cv-1137

v.                                      Honorable Gordon J. Quist

LORAINE BOWERS et al.,

               Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.    Factual allegations

Plaintiff Jonathan Summers presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Ionia Maximum Correctional Facility (ICF), though the actions he complains of occurred while he was housed at the Oaks Correctional Facility (ECF). In his amended complaint (docket #11), Plaintiff sues Prison Health Services, Inc. (PHS), MDOC Director Patricia Caruso, and MDOC administrative officials Jeri-Ann Sherry and Robert Mulvaney, together with the following ECF officials: Warden Cindi Curtin; Security Threat Group (STG) Coordinator/Inspector Loraine Bowers; Grievance Coordinator M.E. McDonald; Corrections Officer A. Clouse; Resident Unit Officers (RUOs) R. Woods, (unknown) Brown, (unknown) Skidmore, (unknown) Seibert, (unknown) Benn, (unknown) Ney, (unknown) Salazar, (unknown) Schreiber, (unknown) Barton, and (unknown) Wandrych; Assistant Deputy Wardens Richard Sharp, Robert Sanders, and M. Haske; Resident Unit Managers (RUMs) (unknown) Thomas and (unknown) Rozajnik; Nurses (unknown) Briskie and (unknown) Bellinger; Hearing Officers Elizabeth Buren and Richard Stapleton; Hearing Investigator (unknown) Basset; an unknown mailroom supervisor and two other unknown mailroom employees; an unknown health care unit manager; an unknown doctor; an unknown physicians assistant; three unknown nurses; five unknown STG members; an STG team member, badge #20036; and the new STG Director (unknown) Travelbee.

Plaintiff's amended complaint substantially consists of a lengthy series of conclusory paragraphs about each of the Defendants. Plaintiff's principal allegation is that, on August 11, 2009, Defendant RUOs Clouse, Woods, Brown, Wandrych, Salazar, Barton, Benn, and Ney failed to protect him from an assault by two other prisoners and conspired to fabricate a major misconduct report accusing Plaintiff of fighting, ostensibly in violation of his rights to "due process, equal

protection, liberty, and procedural statutory rights secured by U.S. Const. Am. IV, V, VIII, XIV §§ 1,2,3,4,5." (Am. Compl. ¶ 10, Page ID #104.) The amended complaint itself is devoid of additional facts about the incident. However, according to Plaintiff's attachments to the original complaint, the alleged assault occurred when two prisoners chased Plaintiff through the laundry room and into the dining hall. When Plaintiff entered the dining hall, he turned and began to fight the prisoners who chased him. Officers Clouse, Woods and Brown apparently separated the prisoners, and all three prisoners were removed to segregation. Defendant Clouse wrote a misconduct charging Plaintiff with fighting, stating that Plaintiff could have run to an officer for help rather than turning and fighting. Defendants Wandrych, Brown, Schreiber, Woods, Seibert, Skidmore, Salazar, Barton, Ney and Benn all submitted statements to the hearing officer, Defendant Buren. On August 11, 2009, Defendant Hearing Officer Buren rejected Plaintiff's defense of self-defense, finding that he had other alternatives to the use of force. Plaintiff sought rehearing, which was denied by Defendant Stapleton on September 21, 2009.

In further conclusory paragraphs,[1] Plaintiff alleges that Defendant RUO Schreiber supported the conspiracy to fabricate a misconduct and was deliberately indifferent to his medical needs. In addition, Plaintiff contends that Defendants Skidmore, Basset, Sanders, Thomas, and Stapleton condoned and acquiesced in the discriminatory misconduct report. He appears to allege that Defendant Inspector Loraine Bowers discriminated against him on the basis of race, ethnicity,

---

[1] The following is a sample of the type of conclusory paragraph set forth in the complaint:

On 8/11/2009 ECF officer Benn (unknown) jointly and severally conspired with his "white co-workers" fabercating [sic] a fighting major misconduct report, with ECF officer Clouse, Woods, Brown, deprived Plaintiff Jonathan Summers of his federal guaranteed due process, equal protection procedural and statutory rights to be free from excessive force, cruel and unusual punishment in violation of the U.S. Const. Ams. IV, V, VIII, XIV §§ 1,2,3,4,5. . . (and being assaulted by two (2) prisoners).

(Am. Compl., ¶ 24, docket #11, Page ID #110.)

and gender and violated substantive due process by mis-handling the video recordings of the assault by the two prisoners and/or failing to take unspecified action in response to the videorecording.

Plaintiff next generally alleges that, on September 21, 2009, an unknown mailroom supervisor and another unknown mailroom employee, with discriminatory intent, conspired with Defendant Bowers to seize and hold his legal and personal mail. The unknown mailroom employee also allegedly delayed Plaintiff's receipt of Defendant Stapleton's denial of reconsideration of the misconduct ticket from the time it was issued on September 2, 2009 and the time it was given to Plaintiff on July 26, 2010. Defendant Bowers also allegedly interfered with his mail in some unspecified way on December 4, 2009 and July 26, 2010. In addition, on November 18, 2009, Plaintiff allegedly informed Bowers that he had certain STG-related papers she had requested. Bowers allegedly sent Defendant unknown STG officer #200236 to Plaintiff's cell to take the paperwork, allegedly without due process and in violation of policy. Plaintiff alleges that STG officer #200236 discriminated against him and violated his due process right by falsifying a Notice of Intent (NOI) to take the alleged STG papers. In addition, Plaintiff alleges that all Defendant STG officers destroyed Plaintiff's property, including photographs, ostensibly in retaliation for Plaintiff's past filing of an unspecified grievance. He alleges that the Defendant STG Director Travelbee was responsible for the conduct of the other STG officers and failed to train them. Plaintiff also alleges that, on December 4, 2009, Defendant Grievance Coordinator McDonald acted with racially discriminatory and retaliatory motive in denying his grievance.

Plaintiff alleges that, following Plaintiff's August 11, 2009 altercation with other prisoners, Defendant Nurses Bellinger and Briskie discriminated against him on the basis of race and ethnicity and deprived him of adequate medical care under the Eighth Amendment. He alleges that the unknown health care unit manager, the unknown doctor and unknown nurses failed to

provide any treatment for his bleeding wrist and left hand. He also alleges that Defendants PHS had supervisory responsibility over the other health-care Defendants and failed adequately to train them.

Next, Plaintiff alleges that, on August 19, 2009, Defendant Hearing Officer Buren discriminated against him on the basis of race and violated his right to due process by upholding the misconduct charges. He alleges that Defendant Stapleton conspired to deprive him of these rights, apparently by denying his application for rehearing on September 2, 2009.

He alleges that Bowers conspired to discriminate against him on the basis of race and gender by allegedly retaliating against Plaintiff on November 4, 2009, for filing a grievance by interfering with the grievance process and making unspecified threatening remarks. In addition, he alleges that, on December 4, 2009, Defendant Warden Curtin condoned and acquiesced in the conspiracy by failing adequately to train Bowers and other officers, failing to seek prosecution of other Defendants, and failing to supervise Bowers and others. Curtin also allegedly violated his rights by failing to follow prison policy. Plaintiff further alleges that on January 27, 2010 and February 26, 2010, Defendants Warden Curtin and ADWs Haske and Sharp, as supervisors, acquiesced in the conspiracy, discrimination and retaliation, in violation of his due process and equal protection rights. Curtin also allegedly failed to adequately train Defendants Sharp and McDonald. Defendant Curtin also allegedly condoned and acquiesced in unspecified violations of his equal protection and due process rights on December 4, 2009, February 26, 2009, March 2, 2009, June 30, 2010, and July 20, 2010. Plaintiff alleges that on May 6, 2010 and August 19, 2009, respectively, Defendants Rozajnik and Sanders acquiesced, condoned, and actively participated in the conspiracy. On June 3, 2010, Defendant Thomas also allegedly condoned and acquiesced in the conspiracy with Sharp.

Plaintiff next contends that, on October 21, 2010, Defendants Sherry and Curtin transferred him from ECF to ICF, ostensibly in violation of his rights to equal protection and due process. He alleges that Defendant Patricia Caruso is responsible for all of Defendants' actions, because she is the supervisor of all employees and is responsible for the unconstitutionality of unspecified MDOC policies. Defendant Robert Mulvaney allegedly failed to train STG employees and Defendant Bowers on August 11, 2009.

In addition to his myriad allegations of constitutional torts, Plaintiff alleges that Defendants violated a variety of state criminal offenses involving assault, civil rights, and the making of false reports of crimes. *See* Mich. Comp. Laws §§ 750.81, 750.81a, 750.82, 750.87, 750.147(b), and 750.411(a)(1). He also contends that Defendants' conduct violated 18 U.S.C. §§ 2, 4, 241, 242, 1584, 2071, and 2073.

For relief, Plaintiff seeks a declaration that his rights have been violated on all of the alleged occasions, a temporary and permanent injunction against Defendants to stop the illegal acts, and compensatory and punitive damages.

## II.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As the Supreme Court discussed in *Twombly*, 550 U.S. at 555, a plaintiff's allegations must include more than labels and conclusions. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-50. Here, Plaintiff's amended complaint, while lengthy, contains virtually no factual allegations. Instead, he makes a series of allegations that merely recite boilerplate legal theories. His complaint therefore is wholly conclusory.

### A. MDOC Policies

Plaintiff alleges in several places that Defendants' conduct was unconstitutional because it violated MDOC policies. Specifically, he alleges that property was removed from his cell without due process in violation of MICH. DEP'T OF CORR., Policy Directive 03.03.105; that he was denied health care in violation of PD 03.04.100, ¶¶A-D; that he was disciplined in violation of PD 03.03.105, ¶¶ A-D, EE; that staff was not disciplined in accordance with PD 01.04.110, ¶¶ A-H; that his grievances were not redressed as required by PD 03.02.120(K); and that he was transferred in violation of PD 04.05.120.

Defendants' alleged failures to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

### B. Eighth Amendment

To the extent that Plaintiff alleges that Defendants failed to protect him from the other prisoners, his complaint is deficient. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with

"deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Plaintiff makes no factual allegations that, prior to the altercation, any Defendant was aware of a substantial risk that other prisoners would attack Plaintiff or that they were deliberately indifferent to that risk. He therefore fails to allege a failure-to-protect claim against any Defendant.

Plaintiff vaguely alleges that Defendants Clouse, Woods, and Brown used excessive force in separating Plaintiff from the other two prisoners.[2] Plaintiff does not state whether Defendants caused an injury to his hand during their actions or whether the injury occurred when he was fighting with the other prisoners. Regardless, assuming that Plaintiff was injured by a Defendant attempting to separate the prisoners, he fails to state a claim of excessive force.

Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). The Supreme Court has held that, "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312,

---

[2] Plaintiff makes his vague allegations only in the context of allegations about other Defendants who allegedly condoned and acquiesced in "assaults" by Clouse, Woods, and Brown. (*See, e.g.*, Am. Compl., ¶25, Page ID #110 ("ECF Officer Ney (unknown) jointly and severally actively condone, aquiesced [sic], participated in . . . failure to protect Plaintiff Jonathan Summers from multiple assault batteries [sic] by her co-workers Woods, Brown, and two (2) ECF prisoners on video, subjecting me to excessive force, cruel and unusual punishment . . . .").) However, his specific allegations against Clouse, Woods, and Brown are limited to claims that they failed to protect him from the other prisoners, not that they assaulted him.

should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). "[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6, *quoted in Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002). "Because prison officials 'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' we must grant them 'wide-ranging deference in the . . . execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Combs*, 315 F.3d at 557 (quoting *Hudson*, 503 U.S. at 6).

Plaintiff fails to state an excessive-force claim. It is clear from his allegations that there was a penological justification for Defendants actions to physically restrain Plaintiff and the other prisoners. Plaintiff makes no factual allegations that Defendants applied force in an unreasonable fashion, nor does the nature of the injury he received support an inference that the force used was excessive.

Moreover, Plaintiff's conclusory allegations that he was denied medical care are factually unsupported. The Eighth Amendment's prohibition on cruel and unusual obligates prison

authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

Plaintiff alleges only that, following the altercation on August 11, 2009, his left wrist and hand were bleeding and he had a permanent scar on his hand once the wound healed. Plaintiff makes no further allegation about the seriousness of the injury. He also fails to allege that the injury presented a sufficiently serious risk of harm if not treated. His allegations therefore fall far short of stating an Eighth Amendment claim for inadequate medical care.

## C.      Due Process – Property

To the extent that Plaintiff asserts a due process claim for the destruction or taking of his property, Plaintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981),

*overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived

of property by a "random and unauthorized act" of a state employee has no federal due process

claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-

deprivation remedy exists, the deprivation, although real, is not "without due process of law."

*Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property,

as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468

U.S. at 530-36. Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts

of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See*

*Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th

Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires

dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

   Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state

post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are

available to him. First, a prisoner who incurs a loss through no fault of his own may petition the

institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive

04.07.112, ¶ B (effective Aug. 16, 2010). Aggrieved prisoners may also submit claims for property

loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy

Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims

asserting tort or contract claims "against the state and any of its departments, commissions, boards,

institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit

specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of

property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court

action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

## D. Due Process – Liberty

### 1. Interference with mail

Plaintiff's allegation that Bowers and the unknown mailroom employees interfered with his incoming mail without due process is wholly conclusory and appears to be based on his delayed receipt of a decision denying reconsideration of his misconduct appeal. "[P]rocedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." *Howard v. Grinage*, 82 F.3d 1343, 1349-50 (6th Cir. 1996) (citing *Daniels*, 474 U.S. 327). A claim of negligence is insufficient to support a § 1983 claim. *Daniels*, 474 U.S. at 333-36. Instead, to state a procedural due process claim, a plaintiff must allege a constitutionally arbitrary deprivation. *Id.*; *Howard*, 82 F.3d at 1350 ("'[A]rbitrary in the constitutional sense' for procedural due process purposes means conduct undertaken with something more than negligence."). To state a claim based on the deprivation of procedural due process, the "conduct must be grossly negligent, deliberately indifferent, or intentional." *Howard*, 82 F.3d at 1350.

Although Plaintiff claims that Defendants' actions were intentional, he recites no factual allegations that would support such an inference. "The mere allegation of [constitutionally arbitrary conduct] – or the use in the pleadings of any other 'vituperative epithet,' for that matter – will avail the plaintiff nothing . . . if the facts alleged are not sufficient to make out a constitutional violation." *Llewellen v. Metro. Gov't of Nashville & Davidson County*, 34 F.3d 345, 349 (6th Cir. 1994); *see also Jones v. Sherrill*, 827 F.2d 1102, 1106 (6th Cir. 1987) ("Negligence does not become 'gross' just by saying so."). Instead, "[t]he facts alleged in support of the legal conclusion . . . must

be sufficient to charge government officials with outrageous conduct or arbitrary use of government power." *Id.* Here, Plaintiff alleges only that Defendants Bowers and the unnamed mailroom employees deprived him of his mail intentionally and as part of a conspiracy. He alleges no facts that would support either conclusion.[3]

### 2. Interference with grievance process

Plaintiff also alleges that Defendant Bowers violated his rights by interfering with the grievance process. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant's alleged interference with the grievance did not deprive him of due process.

In addition, even if Plaintiff had been improperly prevented from filing a grievance, it would not have interfered with any constitutional right. His right of access to the courts to petition

---

[3] Plaintiff raises his claim as a procedural due-process challenge. Although he does not expressly raise a First-Amendment claim, his allegations about Defendants' interference with his mail arguably implicate the First Amendment. However, because he alleges no facts supporting his claim that unspecified mail delays were intentional, his First-Amendment claim also fails. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. 2000) (isolated instances of interference with prisoner's mail is insufficient to rise to a First-Amendment deprivation). Moreover, a prison employee's interference with legal mail states a First-Amendment claim only if it results in actual injury to non-frivolous pending litigation. *See Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Plaintiff makes no allegations of such injury.

for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file an institutional grievances. *See, e.g., Lewis*, 518 U.S. 343; *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim.

### 3. Misconduct hearing

Plaintiff alleges that Defendant Buren violated his due process rights by finding him guilty of a major misconduct. Similarly, he alleges that Defendant Stapleton denied him due process by denying his request for rehearing of the misconduct conviction.[4]

"[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence", a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,*

---

[4] To the extent that Plaintiff is challenging the loss of disciplinary credits, his claim ordinarily should be brought in a habeas corpus proceeding. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under § 1983 until the conviction has been overturned*); Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to a case challenging the results of a misconduct hearing that resulted in the loss of good-time credits). However, the Sixth Circuit has held that a challenge to a misconduct conviction involving a Michigan prisoner whose crime was committed after April 1, 1987 is not barred by the doctrine of *Heck. See Thomas v. Eby*, 481 F.3d 434, 439-40 (6th Cir. 2007) (concluding that Michigan's disciplinary credit system is not equivalent to the system at issue in *Edwards*, 520 U.S. 641, because disciplinary credits do not necessarily result in an earlier release, only the possibility of an earlier release). For purposes of this opinion, the Court has assumed that the action is cognizable in a § 1983 proceeding.

63 F.3d at 486 (citing *Hill,* 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added). Moreover, the Constitution does not require that the evidence logically preclude any conclusion but the one reached by the hearings officer in the disciplinary proceeding. *Hill,* 472 U.S. at 456; *see also Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003), *aff'd,* 110 F. App'x 491 (6th Cir. 2004). A hearings officer in a prison disciplinary proceeding is not required to find the prisoner guilty beyond a reasonable doubt, or find that guilty was the only reasonable interpretation of the evidence. *Thomas v. Marberry,* No. 06-cv-13282, 2007 WL 1041250, at *2 (E.D. Mich. Apr. 4, 2007) (citing *Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998)). Further, "this court will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz,* 271 F. Supp. 2d at 948 (citing *Turney v. Scroggy,* 831 F.2d 135, 139-40 (6th Cir. 1987)).

Here, Plaintiff does not dispute that he received a hearing on his misconduct charge. Nor does he contend the hearing failed to comport with the requirements of *Wolff v. McDonnell,* 418 U.S. 539, 563-69 (1974) (holding that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action). In fact, he makes no factual allegations about the sufficiency of the hearing.

Instead, Plaintiff simply argues that Defendants Buren and Stapleton were wrong in concluding that Plaintiff had been fighting. The Due Process Clause does not guarantee that the

procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).

Sufficient evidence clearly supported Bowen's and Stapleton's findings that Plaintiff was guilty of the major misconduct offense of fighting. Although Plaintiff claimed that he didn't start the fight and was acting in self-defense, he does not dispute that he was in a fracas with two other prisoners. According to the attachments filed with Plaintiff's original complaint, ten officers provided statements to the hearing officer. Those statements indicated that, after being chased into the cafeteria, Plaintiff chose to turn and fight rather than continuing to run toward a nearby corrections officer. Regardless of whether Plaintiff disagrees with the result, the many statements of the officers strongly support the finding that Plaintiff was guilty of the major misconduct of fighting.[5]

---

[5]In addition, to the extent that Plaintiff seeks monetary damages, Defendants Buren and Stapleton have judicial immunity. Defendant Buren is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections, for which Defendant Stapleton is responsible. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Defendants Buren and Stapleton are entitled to absolute judicial immunity from Plaintiff's claim for damages.

### E.    Equal Protection

Plaintiff claims that all Defendants discriminated against him on the basis of his race, in violation of his right to equal protection under the Fourteenth Amendment.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When governmental action adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.  To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him in relation to similarly situated others.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id*. at 265-66.

Plaintiff fails to allege that any similarly situated person of another racial group was treated differently.  In addition, he alleges no facts that would show that race was a motivating factor in any action taken by any Defendant.  For both reasons, he fails to state an equal-protection claim.

### F.    Retaliation

Plaintiff alleges that Defendants Bowers and Curtin retaliated against him for filing grievances by interfering with or denying those grievances.  He also alleges that Defendants Sherry and Curtin retaliated against him by transferring him to another prison.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, fails to allege any action taken against him that was sufficiently adverse to state a retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether a defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Plaintiff's allegation that Defendants Bowers and Caruso interfered with and denied his grievances falls far short of alleging adverse action. Even if Plaintiff had been improperly prevented from pursuing a grievance, he cannot show that he was injured in any way. As previously discussed, his right of access to the courts to petition for redress of his grievances by filing a lawsuit cannot be compromised by his inability to file institutional grievances, because the exhaustion requirement only mandates exhaustion of available administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would

be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.

Moreover, Plaintiff's allegation that he was transferred because he filed a grievance also is not sufficiently adverse. The Sixth Circuit has recognized that transfer to another facility ordinarily does not amount to adverse action. As the Sixth Circuit explained in *Ward v. Dyke,* 58 F.3d 271 (6th Cir. 1995):

> Prisoners do not have a constitutional right to be incarcerated in any particular institution. *See Meachum v. Fano*, 427 U.S. 215 (1976). Moreover, the Supreme Court has held repeatedly that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Id.*; *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228.

*Ward*, 58 F.3d at 274. "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Sigger-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and

moved him further from the attorney); *Johnson v. Beardslee,* No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010).

Plaintiff alleges that he was transferred from a level IV facility to a level V facility. He does not allege that his access to the courts was compromised as a result of the transfer. His allegations of retaliation based on the transfer, therefore, are insufficient to constitute adverse action.

Further, Plaintiff alleges absolutely no facts that would show a connection between the protected conduct (filing a grievance) and the allegedly adverse action. In some cases a sufficiently close temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Here, Plaintiff alleges that the initial prisoner assault occurred on August 11, 2009. He does not allege when he filed his grievance or against whom. But Bowers' alleged interference with Plaintiff's grievance did not occur until November 4, 2009. Similarly, Curtin and Sherry did not transfer Plaintiff to ICF until October 21, 2010. Given the distant temporal relationship, Plaintiff's allegations of retaliatory motive are wholly unsupported.

## G.    Supervisory Liability

Even had Plaintiff alleged sufficient facts to support a constitutional claim against some Defendant, he fails to allege facts showing active, unconstitutional conduct by numerous

Defendants. Plaintiff alleges that Defendants Skidmore, Basset, Sanders, Thomas, and Stapleton merely condoned and acquiesced in the filing of a discriminatory misconduct report. Plaintiff also alleges that Defendants Curtin, Haske, Sharp, and Travelbee, as supervisors, acquiesced in the conspiracy, discrimination, and retaliation of their subordinates. Further, Plaintiff alleges that Defendant Curtin was liable for denying his grievances. In addition, Plaintiff alleges that Defendant Caruso was responsible as a supervisor over all of the Defendants and was responsible for the violations of any policy.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Skidmore, Basset, Sanders, Thomas, Stapleton, Curtin, Haske, Sharp, Travelbee, and Caruso engaged in any active unconstitutional behavior.

## H. Conspiracy

Although Plaintiff claims that all Defendants conspired under 42 U.S.C. § 1985 to deprive him of his constitutional rights, Plaintiff fails entirely to allege any fact that would support the existence of a conspiracy. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140 at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to allow or cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. Therefore, he fails to state a claim for conspiracy.

III.     State Law

In addition to his federal claims, Plaintiff alleges violations of a variety of state laws. To the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely

by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## <u>Conclusion</u>

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  January 19, 2011                                      /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                      UNITED STATES DISTRICT JUDGE